[Civ. No. 2698. Third Appellate District.—December 3, 1923.]

## V. L. HATFIELD, Petitioner, v. SUPERIOR COURT OF SAN JOAQUIN COUNTY et al., Respondents.

[1] ATTORNEY AND CLIENT—RELIANCE UPON ADVICE GIVEN.—In a controversy arising between an attorney and his client, the client is justified in relying upon the advice of the attorney prior to the time of the controversy.

[2] ESTATES OF DECEASED PERSONS — TITLE TO MONEYS — ERRONEOUS ADVICE OF COUNSEL—SETTING ASIDE OF ACCOUNT AND DECREE—DISCRETION.—It is not an abuse of discretion to set aside a decree settling the final account and distributing the estate of a deceased, where the motion to set aside such decree, on the ground that the same was taken "through mistake, inadvertence, surprise and excusable neglect, is made about four months after the entry of the decree," and the affidavits and evidence offered in support of such motion show that a large amount of money, which was included in the estate and ordered distributed by the decree, was deposited in banks in the joint names of the deceased and one of the heirs (who was also executor), under agreements that such money was payable to either or to the survivor, that the attorney who conducted all the legal proceedings in the estate was fully informed as to the status of such accounts, but he advised said heir that the moneys belonged to the estate and had to be probated, and said heir relied upon such advice.

APPLICATION for a Writ of Certiorari to annul an order of the Superior Court of San Joaquin County, D. M. Young, Judge, setting aside a decree settling a final account and distributing an estate. Writ denied and order affirmed.

The facts are stated in the opinion of the court.

Martin I. Welsh, W. H. Hatfield and J. T. McMenamin for Petitioner.

Johnson & Lemmon for Respondents.

FINCH, P. J.—This is an original application for a writ of review whereby petitioner prays for the annulment of an order of the respondent court setting aside its decree settling the final account and distributing the estate of Henrietta Kaiser, deceased.

Petitioner was the attorney for George Kaiser, the executor of decedent's last will. As such attorney, petitioner conducted all the legal proceedings in the administration of the estate and prepared and filed a final account and petition for distribution, which the executor duly verified. The final account credits the executor with $802.69 as attorney fees and the same amount as commissions of the executor. These commissions and fees were computed upon the value of the estate as set forth in the final account, consisting of cash in the sum of $27,169.83 and other property of the value of $100. The court settled the account as presented and distributed the estate, in accordance with the terms of the will, in equal shares to George and Alexander Kaiser, the sons of decedent.

The decree of distribution was entered June 5, 1922. On the sixth day of October, 1922, George Kaiser and Alexander Kaiser filed notice that on the sixteenth of that month they would move the court for an order setting aside the decree settling the final account and distributing the estate on the ground that the same was made and taken against them "through their mistake, inadvertence, surprise and excusable neglect." Accompanying the notice of motion, there was filed the affidavit of George Kaiser, stating that the moneys set forth in the final account and petition for distribution as a part of the estate of decedent had been deposited by Henrietta Kaiser and affiant in several banks "in the names of the said Henrietta Kaiser and George Kaiser under agreements entered into between said Henrietta Kaiser and affiant and the said several banking institutions that the said sums of money so deposited and its accumulations were deliverable or payable to either the said Henrietta Kaiser or affiant or to the survivor of them"; that after the death of decedent and prior to the filing of the petition for probate of her will, affiant consulted petitioner herein relative to the property of decedent and fully informed him that said bank accounts "were joint accounts standing in the names of affiant and said decedent and payable to either or to the survivor"; that petitioner herein thereupon "advised affiant that the said bank accounts belonged to the estate of said Henrietta Kaiser, . . . deceased, and must be probated upon in order that the title thereto be finally passed to the heirs of said decedent; that affiant

relying upon said advice of said V. L. Hatfield employed
and engaged the said V. L. Hatfield as his attorney for the
purpose of probating the estate of said decedent''; that in
reliance upon said advice affiant included said moneys as
a part of said estate in the petition for the probate of the
will, the inventory and the final account and petition for
distribution; that affiant has not paid the sums allowed as
attorney's and executor's fees; and that the moneys de-
posited in said bank accounts have been the property of
affiant at all times since the death of decedent.  At the
hearing of the motion to set aside the decree, George Kaiser
testified: ''I placed all of my money into a joint tenancy
agreement with my mother, so that in case of my death
she would be—it would go absolutely to her, and we had
the agreement, and she placed hers the same way. . . .
She . . . went into this joint tenancy agreement with the
sole intent that I became sole possessor of her money at
her death''; that all of the money which was listed as the
property of the estate had been deposited by decedent out
of her own funds; that the witness had placed none of his
own money into those particular deposits, but that decedent
and the witness had other joint bank accounts in which
the witness had deposited his own moneys.  The testimony
of the witness was corroborated by certain deposit cards
showing joint accounts in various banks.  The evidence
was such as to warrant the court in concluding that the
moneys in these joint accounts passed to George Kaiser on
the death of his mother.

Alexander testified that after his mother's death he and
George Kaiser sought the advice of petitioner relative to
the inheritance tax due the state on the moneys in the
joint accounts which passed to George upon his mother's
death, gave him the deposit books and stated the facts rela-
tive to the deposits; that petitioner advised them that such
moneys did not so pass but that they were a part of the
mother's estate; that, having implicit confidence in peti-
tioner, they followed his advice and employed him as at-
torney for the administration of the estate; that in Decem-
ber, 1921, the witness became convinced that petitioner's
advice was erroneous and took the matter up with him;
that petitioner informed the witness that the money ''could
not be withdrawn from the estate''; and that the witness

then informed George Kaiser that petitioner said "it could not be taken out, and we might as well let it ride to the end of the term." After the witness had consulted petitioner in December, as stated, the latter wrote the witness relative to the withdrawal of the moneys from the estate, stating what it would be necessary to set forth in the petition therefor and saying: "He (George) will have to set forth a declaration that when he filed his petition for letters testamentary, and when he prepared the inventory, that he did so under a misapprehension of facts, and that he had forgotten that when he and his mother signed the joint tenancy agreement deposit cards, that she had told him that upon her death the money was to be absolutely his, and that neither you nor anyone else was to participate therein. Such change of face and reversal of attitude on George's part is going to exhibit him to the court as a 'bone-head' and I doubt very much if the court would believe him even though he so testified. . . . That there may be no misunderstanding of the subject under discussion, and that I may know how fully George will testify in support of the petition to be prepared and filed, I am sending him a copy of this letter." Alexander requested petitioner not to send a copy of the letter to George and it was not sent to him. George learned in December, 1921, that the money in question was not the property of the estate. He testified: "I found out in December—that is, we investigated in December and, as I said, I protested the way it was handled, and asked it be taken out, and Mr. Hatfield informed us that it could not be taken out. Q. Informed you? A. No, sir, not me. . . . Q. You knew your brother was making objections back in December, and had this discussion with Mr. Hatfield? A. Certainly." He also testified that he did not see the letter herein referred to until after the estate was closed.

In order that the relations of the parties may be the better understood, it may be said that George Kaiser and petitioner were not acquainted with each other prior to the employment of the latter by the former, but Alexander Kaiser and petitioner had been personal friends and George employed petitioner at the solicitation of Alexander. George lived in Lodi while petitioner and Alexander resided in Sacramento. During the administration of the

estate, George seems to have given but little personal attention to the matter, but left the details thereof to Alexander and petitioner.

The testimony of petitioner is contradictory of that of Alexander and George Kaiser in material respects, but the determination of the conflict thus raised was for the trial court. There is sufficient evidence to support the conclusion that George Kaiser was misled to his prejudice by erroneous advice given him by petitioner, however honestly the advice may have been given, and that he is excusable for having mistakenly allowed the property of the estate to be distributed as it was in reliance upon such advice. Whether, under the facts stated, the moneys in question passed to George upon the death of his mother was a question of law. When, after stating in the petition for probate of the will and in the inventory that such moneys were a part of decedent's estate, George became convinced that they were not such, then the question whether they could be withdrawn from administration was again one of law. [1] In a controversy arising between an attorney and his client, it certainly must be the law that the client is justified in relying upon the advice of the attorney prior to the time of the controversy. In *Douglas* v. *Todd*, 96 Cal. 655 [31 Am. St. Rep. 247, 31 Pac. 623], where the defendant, in reliance upon the advice of his attorney to the effect that he had no defense to the action, had failed to answer the complaint, the court said: "Section 473 of the Code of Civil Procedure is broad enough to justify the action of the court below in relieving a party from a mistake of law on the part of his attorney, when, by reliance upon it, he is prevented from making any defense." (See, also, *Mitchell* v. *California etc. S. S. Co.*, 156 Cal. 576 [105 Pac. 590], and *Williams* v. *Thompson*, 60 Cal. App. 658 [213 Pac. 705].) The instant case is stronger in favor of George Kaiser for relief, in that he was prevented from making his claim to the property, at the time the estate was settled, by relying upon the advice of his attorney who became his adversary on the motion to set the decree aside.

Petitioner contends that the property of the estate had been delivered to the distributees under the decree of distribution before the motion was made to set the decree

aside and that therefore the court was without jurisdiction to vacate the decree. Whatever the fact may be in that regard, the fee allowed petitioner has not been paid, and if the moneys in controversy did not belong to the estate, then petitioner is entitled to only a small part of the amount so allowed and is not entitled to payment out of the moneys mentioned in the decree. In the final settlement of the estate petitioner will be afforded an opportunity to show, if he can, that such moneys were a part of the estate of decedent. [2] On the record here, it cannot be said that the trial court abused its discretion in setting aside the decree of distribution and the order settling the final account.

The petition is denied and the order is affirmed.

Plummer, J., and Hart, J., concurred.